IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD GATHRIGHT, | No. CIV S-02-1833-DFL-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| T.L. ROSARIO, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment (Doc. 69).  Plaintiff has not filed an opposition.

**I.  BACKGROUND**

Dr. Frishman, a prison staff psychiatrist, interviewed plaintiff in his holding cell on October 22, 2001.  Dr. Frishman noted that plaintiff was exhibiting signs of grandiosity and paranoia consistent with plaintiff's schizophrenia.  Dr. Frishman recommended that plaintiff be admitted to the prison infirmary in order to change his medications.  Because plaintiff would not voluntarily leave his cell to go to the infirmary, an extraction team was assembled at 2:30 p.m. to

1

forcibly extract plaintiff from his cell if he continued to refuse to cooperate. Due to plaintiff's history of prior assaults on prison staff, and in light of his deteriorating condition, all efforts were made to persuade plaintiff to submit to handcuffs before opening his cell door. As plaintiff continued to resist, defendant Akin, a correctional officer, admonished plaintiff that he would be sprayed with pepper spray if he did not cooperate. Plaintiff continued to resist.

Throughout the next forty-five minutes, defendants Akin and Walker continually attempted to get plaintiff to leave his cell. Plaintiff was intermittently sprayed with pepper spray during this period. At 3:15 p.m., defendant Rosario recommended the use of tear gas to gain plaintiff's cooperation. After being exposed to tear gas, plaintiff finally submitted to handcuffing and was immediately escorted to a decontamination shower.

Plaintiff took a 9-minute shower, but continued to refuse to go to the infirmary. After his shower, plaintiff attempted to kick correctional officers. Plaintiff was eventually physically restrained and taken to the infirmary.

## II. APPLICABLE STANDARD

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing

2

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

1 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
2 See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
3 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
4 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
5 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
6 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
7 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
8 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
9 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
10 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
11 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

12       On July 3, 2003, the court advised plaintiff of the requirements for opposing a
13 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
14 F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

15
16 ### III.  DISCUSSION

17       Plaintiff alleges a violation of his Eighth Amendment right to be free from cruel
18 and unusual conditions of confinement as a result of the October 22, 2001, cell extraction.  In their
19 motion for summary judgment, defendants argue that there is no evidence of the use of excessive
20 force.  Specifically, defendants assert that the force used was justified and not applied maliciously
21 for the purpose of causing harm to plaintiff.  Defendants also assert that they are entitled to
22 qualified immunity.
23 / / /
24 / / /
25 / / /
26     **A.**    **Excessive Force**

1        The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

        When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the fact of risk of injury to inmates or prison employees.  See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.  See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.  See Whitley, 475 U.S. at 321-22.

An analysis of these factors in light of the facts of this case clearly shows that defendants did not act maliciously or sadistically in the course of the October 22, 2001, cell extraction. First, given plaintiff's medical condition, there was a need to remove plaintiff to the infirmary. Second, plaintiff was given every opportunity to be taken to the infirmary voluntarily and without the use of force. Third, after plaintiff resisted, there was a need for the use of force in order to get plaintiff to the infirmary. Fourth, the amount of force used was reasonable in light of plaintiff's resistance. In short, force in this case was applied in a good-faith effort to both maintain order and obtain for plaintiff the medical attention he needed.

Defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment excessive force claims.

**B.    Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

      When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

      The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

      In this case, as discussed above, the facts do not establish that defendants violated any of plaintiff's constitutional rights. Therefore, qualified immunity does not apply.

/ / /
/ / /
/ / /
/ / /
/ / /

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion for summary judgment be granted and that judgment be entered accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 24, 2005.

*/s/ Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE